# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHELLE HARTLE f/k/a MICHELLE WHITNEY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 12 C 1096 ) |
| TIE NATIONAL, LLC, d/b/a TIE NATIONAL ACCOUNTS, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Michelle Hartle has sued her former employer, Tie National, LLC, for discrimination on the basis of gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). She alleges that Tie National terminated her because she was pregnant. Tie National has moved for summary judgment on Hartle's claim. For the reasons stated below, the Court grants Tie National's motion.

## Background

As an initial matter, Hartle has asked the Court to strike a number of exhibits submitted by Tie National in support of its motion for summary judgment. Specifically, Hartle argues that the spreadsheet report of Hartle's Internet history and the documents that Tie National received from BabyCenter LLC—whose website Tie National contends Hartle visited while at work—are inadmissible hearsay and the company has not laid a sufficient foundation for their admission. Because the Court has not relied on any of

these documents in determining Tie National's motion for summary judgment, the Court need not rule on the admissibility of these exhibits.

Tie National hired Hartle as a billing analyst in September 2010.[1] As a billing analyst, Hartle managed customer invoice data, organizing invoices from telecommunication providers into a summary that she sent to Tie National's customers for payment. Hartle reported to Kathy Powell, Internal Operations Supervisor at Tie National, who in turn worked for Michael Durante, Vice President of Operations.

On December 8, 2010, Hartle received a ninety-day performance evaluation. Powell testified during her deposition that she drafted the evaluation, and both she and Durante signed the evaluation. The review stated that Hartle performed "[w]ell [a]bove" expectations in the area of quality service, and met expectations in every other category. Pl.'s Ex. A at 2–3. Powell stated that she initially had given Hartle a less favorable evaluation but that Durante felt she was "being too harsh" on a relatively new employee. Def.'s Ex. C at 48. Durante stated that he did not remember whether he spoke with Powell about Hartle's evaluation. Based on the evaluation, Hartle received a small raise in pay.

Powell testified that after completing the evaluation, she began noticing problems with Hartle's work. Specifically, she testified that Hartle was incorrectly entering data, failing to meet deadlines, and using the Internet excessively. Powell stated that although initially Hartle attempted to hide her Internet usage while Powell was walking around the office, eventually "she got to a point where she stopped hiding it and she would just leave it up all the time when I came over." *Id.* at 78. According to Powell,

---

[1] At the time that she worked at Tie National, Hartle was known as Michelle Whitney. The Court will refer to the plaintiff by her current name to avoid confusion.

2

she told Hartle that "it's important that she gets her job done. And if the job is not done, you know, that's going to be a problem for us." *Id.* at 82.

During her deposition, Hartle admitted that she used the Internet for personal reasons at work. She testified that she could not remember which websites she visited or the amount of time she spent on the Internet for personal reasons. She stated that Powell never gave her a verbal warning about her Internet usage. She admitted, however, that around January 6, 2011, Powell talked to her about submitting her assignments late and that Powell asked about her Internet usage and told her to "keep it to a minimum." Pl.'s Ex. A at 65. Hartle denied any other conversations regarding her Internet use. She further denied any other performance issues. It is undisputed that Hartle never received a written warning for her Internet usage.

Durante testified during his deposition that Powell talked to him about Hartle's Internet use in early January and expressed concern about her ability to perform her job responsibilities. According to Durante, Powell asked him "if it would be okay to terminate her." Def.'s Ex. B at 44. Durante told Powell not to fire Hartle and asked her to work with Hartle to improve her performance. *Id.* Durante met with Hartle and Powell to look over the data Hartle was organizing and generally help her improve. Durante stated that Tie National had recently hired another billing analyst, Doreen Johnson, who "was really picking up and running with this stuff a lot better than Michelle was." *Id.* at 49.

Durante stated that on January 14, 2011, Tie National began an investigation into Hartle's Internet use. Durante asked Tie National's IT administrator to access Hartle's Internet history, and when they discovered that the history had been cleared, he asked

3

the administrator to record the Internet activity from that day forward. According to Durante, he and Powell did not receive any report of that history until the evening of January 20 or the morning of January 21.

At some point during the week of January 17, Hartle told Powell and Durante that she was pregnant. Hartle testified that Durante and Powell both offered her congratulations. Hartle also told Cassie Jolley, who worked in Tie National's human resources department, and talked with Jolley about what, if any, policy the company had for maternity leave.

Powell testified that on January 20, she and Hartle left the office for lunch. According to Powell, Hartle did not indicate in the company's time management system that she had left the office. Instead, Hartle "logged out and then logged back in a half hour later" once she returned, "although [they] took a longer lunch than that." Def.'s Ex. C at 106. According to Powell, Hartle also left before 5 p.m. that day. She stated that Hartle was repeatedly failing to work the required forty hours of work each week, and so she told Hartle it was necessary to meet this requirement. It is undisputed that all of Hartle's requests for time off were granted.

Durante stated that on January 20–21, he and Powell reviewed a report of Hartle's Internet history for the prior week. According to Durante, he considered issuing a written warning to Hartle but ultimately decided to terminate her. Durante specifically testified that he decided to terminate Hartle because of excessive Internet use, her performance problems, her inability to "stay[] on top of her tasks" and the problems she had communicating with the company's customers in a timely manner. Def.'s Ex. B at 63.

Durante terminated Hartle on January 27, 2011. It is undisputed that Durante told Hartle that he was firing her based on performance. Durante contends that he further explained that the termination was based on the results of the company's investigation into her Internet use, among her other performance issues. Hartle denies that Durante gave her any further clarification. Tie National did not hire a new employee to replace Hartle but instead assigned her accounts to Johnson.

**Discussion**

Summary judgment is proper when "the admissible evidence, construed in favor of the non-movant, reveals no genuine issue as to any material facts and establishes that the movant is entitled to judgment as a matter of law." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 690–91 (7th Cir. 2010). A genuine issue of material fact exists if there is sufficient evidence to allow a reasonable jury to find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010). In deciding on a motion for summary judgment, a court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Groesch v. City of Springfield*, 635 F.3d 1020, 1022 (7th Cir. 2011).

Hartle contends that Tie National terminated her based on the fact that she was pregnant and thus discriminated against her on the basis of her gender. 42 U.S.C. § 2000e(k) (discrimination against an employee on the basis of pregnancy qualifies as sex discrimination for purposes of a Title VII claim). A plaintiff may prove a claim of discrimination by either the direct or indirect method. *See Coleman v. Donahoe*, 667

5

F.3d 835, 845 (7th Cir. 2012). Because Hartle pursues her claim under both methods, the Court will consider each one in turn.

**A.     Direct method**

Under the direct method of proof, a plaintiff can survive summary judgment by presenting direct or circumstantial evidence that creates a convincing mosaic of discrimination. *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 674 (7th Cir. 2012). "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 548 (7th Cir. 2011) (citing *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). In the absence of direct evidence, the Title VII plaintiff can rely on circumstantial evidence, but only if that evidence points "directly to a discriminatory reason for the employer's action." *Good*, 673 F.3d at 675; *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) ("The focus of the direct method of proof thus is not whether the evidence offered is direct or circumstantial but rather whether the evidence points directly to a discriminatory reason for the employer's action." (internal quotation marks omitted)).

The circumstantial evidence necessary to prevail under the direct method typically falls into one of three categories. The first includes "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 735 (7th Cir. 2011). The second consists of "evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class

received systematically better treatment . . . ." *Harris v. Warrick Cnty. Sheriff's Dep't*, 666 F.3d 444, 448 (7th Cir. 2012). A third type is "evidence that the employer offered a pretextual reason for an adverse employment action." *Coleman*, 667 F.3d at 860.

**1.     Timing**

Hartle contends that the timing of her termination—ten days after reporting her pregnancy—is sufficient to give rise to a genuine issue of material fact regarding the true reason of her termination. Although timing is "often an important evidentiary ally of the plaintiff," *Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004), it is rarely sufficient on its own to create a genuine issue of material fact as to the cause of plaintiff's termination. *Coleman*, 667 F.3d at 860–61; *see also Scaife v. Cook Cnty.*, 446 F.3d 735, 742 (7th Cir. 2006) ("Close temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment provided that there is other evidence that supports the inference of a causal link.").

Hartle has provided no other evidence in this regard other than temporal proximity. To the contrary, it is undisputed that Powell and Durante had already begun to investigate Hartle's Internet use before learning that she was pregnant, and Durante testified that he was waiting for a report on Hartle's web history when Hartle told him about her pregnancy. Additionally, Hartle admitted that Powell had already told her to "keep [Internet usage] to a minimum." Def.'s Ex. A at 65. Given these circumstances, the timing of Hartle's termination by itself would not permit a reasonable jury to conclude that Tie National terminated Hartle because of her pregnancy. *See Silverman*, 637 F.3d at 736 (finding a two- to three-week interval insufficient to defeat summary judgment); *see also Coleman*, 667 F.3d at 861 ("Our cases reject any bright-line numeric rule, but

7

*when there is corroborating evidence* . . . an interval of a few weeks or even months may provide probative evidence of the required causal nexus.") (emphasis added).

### 2. Similarly situated employees

Hartle next argues that a similarly situated employee who was not pregnant received more favorable treatment. Specifically, Hartle contends that Doreen Johnson, who took over Hartle's assignments following her termination, was treated more favorably because she was not fired. Yet Hartle has made no showing that Johnson was similarly situated to her in any way. "The purpose of the 'similarly situated' comparator element is to ensure that all other variables are discounted so that an inference of unlawful intent would be reasonable." *Silverman*, 637 F.3d at 742. Showing that other factors are generally equal among comparators is important because it allows courts to exclude differences in behavior as the cause for the disparate treatment, supporting the inference that discriminatory motive is at play. *Id.* Although there is no magic formula, courts typically require a plaintiff alleging that a similarly situated employee was given better treatment to "at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Coleman*, 667 F.3d at 847 (internal quotation marks omitted).

Although Johnson and Hartle dealt with the same supervisors and were subject to the same standards, Hartle has provided no evidence that Johnson engaged in any personal Internet use, let alone an amount of personal Internet use comparable to Hartle. She instead relies on Powell's testimony that the Internet usage policy was

8

relaxed "as long as work was getting done and you were completing your expectations." Def.'s Ex. C at 74–75. Yet the fact that Powell did not enforce a zero-tolerance no-Internet policy does not amount to evidence that Johnson used the Internet for personal reasons or that she did so at a level that would make her comparable to Hartle. Additionally, Hartle testified during her deposition that she could not recall by name any employee whom she saw using the Internet for personal reasons while at Tie National. Thus there is no evidence to suggest that Hartle and Johnson were similarly situated employees. The fact that Johnson was not terminated does not support Hartle's claim of discrimination.

### 3. Pretext

Finally, Hartle argues that Tie National's purported reason for her termination—her excessive personal Internet usage—was pretextual. In analyzing pretext, "[t]he only concern . . . is the honesty of the employer's beliefs." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006). Thus the question for the Court at summary judgment is whether the plaintiff has provided evidence from which a reasonable jury could conclude that the defendant's purported reason for termination was a lie in whole or in part.

"A plaintiff can establish pretext either directly, with evidence suggesting that retaliation or discrimination was the most likely motive for the termination, or indirectly, by showing that the employer's proffered reason was not worthy of belief." *Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir. 1999). Indirect proof of pretext would include evidence that Tie National's explanation has no basis in fact or that the explanation was not the real reason for firing her. *Worth v. Tyer*, 276 F.3d 249, 266 (7th Cir. 2001); *see*

9

*also Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1063 (7th Cir. 2008) ("Showing pretext requires proof that the defendant's explanation is unworthy of credence." (internal quotation marks omitted)).

Hartle contends that the facts that Powell and Durante never warned her about her Internet usage prior to her termination and that she received a good review in December 2010 are evidence that Tie National's proffered reason for termination is untrue. Yet Hartle admitted that she used the Internet for personal reasons while at work and that Powell had admonished her regarding her Internet use. It is also undisputed that Powell had expressed concern to Hartle about her ability to comply with payment deadlines. Additionally, both Powell and Durante stated that they only discovered the level of Hartle's Internet use after her December 2010 review. Finally, although Powell testified that in practice Tie National's Internet usage policy is relaxed, it is undisputed that the company did have a policy against using the Internet for personal reasons. Given the timeline of events, the mere fact that Hartle received a positive evaluation at some point during her employment at Tie National is not sufficient to give rise to an issue of fact regarding the veracity of the reason the company gave for Hartle's termination in January 2011.

In sum, the Court concludes that no reasonable jury could find that Tie National discriminated against Hartle under the direct method of proof.

**B.    Indirect method**

The indirect method of proving discrimination uses the burden-shifting methodology described by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case under the indirect method, a

plaintiff must present evidence that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated individuals who were not in the protected class. *Coleman*, 667 F.3d at 845. If Hartle satisfies the prima facie requirements, the burden shifts to Tie National to articulate a legitimate, non-discriminatory reason for the termination. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009). Hartle must then present evidence from which a reasonable jury could find that Tie National's proffered reasons are pretextual. *Id.*

Tie National contends that Hartle is unable to show either that she was meeting its legitimate expectations at the time of her termination, or that she was treated less favorably than similarly situated individuals who were not in the protected class. Because Hartle is unable to show the latter requirement, the Court need not address Tie National's first argument.

Hartle contends that she does not need to identify any similarly situated non-pregnant employees who were treated more favorably because Johnson, who was not pregnant, assumed Hartle's job responsibilities, thereby effectively replacing her. Hartle relies on a rule that the Seventh Circuit has applied to reduction-in-force (RIF) cases—namely, that instead of identifying similarly situated employees, plaintiffs must show that employees outside the protected class absorbed the plaintiff's job responsibilities after termination. *Filar*, 526 F.3d at 1060. The Seventh Circuit has stated that this alternative standard is appropriate even in a single-discharge or "mini-reduction-in-force case . . . [w]hen an employee in a unique position is terminated and her position is not filled, but employees outside the protected class assume the fired employee's


11

responsibilities . . . ." *Griffin v. Sisters of St. Francis, Inc.*, 489 F.3d 838, 845 (7th Cir. 2007).

The Seventh Circuit has explained that when a RIF occurs, the company has implicitly admitted that one position in the company is fungible with another. Under such circumstances, evidence that other employees outside the protected group assumed the responsibilities of the now-eliminated position is sufficient to raise an inference of discrimination. *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 133132 (7th Cir. 1995). Additionally, when there are a limited number of employees such that there are not multiple workers filling the same job description, identification of other employees who are "similarly situated" can be unfairly difficult. *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000). Finally, courts have noted that when an RIF occurs, there is a "danger that the employer can hide a discriminatory motive for terminating the employee simply by stating that the job was eliminated . . . ." *Griffin*, 489 F.3d at 845.

Unlike the cases upon which she relies, Hartle did not occupy a unique position within Tie National. She was a billing analyst, as was her co-worker Johnson. Although Johnson assumed responsibility for Hartle's accounts after Tie National terminated Hartle, Johnson already performed those same general duties prior to the termination. Indeed, Johnson's and Hartle's job duties were identical at the time of Hartle's termination; Hartle argued, in support of her claim under the direct method, that Johnson was a similarly situated employee who received more favorable treatment. Additionally, Tie National has not attempted to justify Hartle's termination based on any reduction in the work force. Its reason for termination was performance issues and

12

excessive Internet use. Thus Hartle's termination does not amount to a mini reduction in force.

For these reasons, it is inappropriate to excuse Hartle from the prima facie requirement to show a similarly situated employee who received favorable treatment. *See Bellaver*, 200 F.3d at 494 (prima facie requirements should not be applied rigidly and may be adapted "to reflect more fairly and accurately the underlying reality of the workplace"). As discussed above, Hartle has not produced any evidence that Johnson was similarly situated to Hartle. Thus she cannot meet the prima facie requirements of her discrimination claim under the indirect method. *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 851 (7th Cir. 2010) (nothing that the "similarly situated" and "pretext" analyses are substantially the same under both the direct and indirect method).

**Conclusion**

For the reasons stated above, the Court grants Tie National's motion for summary judgment [docket no. 27] and directs the Clerk to enter judgment in favor of the defendant.

                                                            _____
                                                            MATTHEW F. KENNELLY
                                                            United States District Judge

Date: July 22, 2013